## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

### Holding a Criminal Term
### Grand Jury Sworn in on September 30, 2004

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NUMBER:    GJO |
| | : | |
| | : | GRAND JURY ORIGINAL |
| | : | |
| v. | : | VIOLATIONS: |
| | : | |
| | : | |
| | : | 18 U.S.C. § 1344 (Bank Fraud); |
| KENNETH C. BAKER, JR., | : | 18 U.S.C. § 1956 (Money Laundering); |
| | : | 18 U.S.C. § 2314 (Interstate |
| | : | Transportation of Stolen Property); |
| | : | 18 U.S.C. § 2 (Aiding and Abetting and |
| Defendant. | : | Causing an Act to be Done); |
| | : | 22 D.C. Code §§ 3221(a), 3222(a)(1)) |
| | : | (First Degree Fraud) |
| | : | |

### INDICTMENT

The Grand Jury charges that:

### COUNT ONE – BANK FRAUD

INTRODUCTORY ALLEGATIONS

At times material herein:

1. Defendant KENNETH C. BAKER, JR. ("BAKER") worked as an investment consultant with SunTrust Bank's securities division, serving numerous branches including the Metro Center, L'Enfant Plaza, and Hechinger Mall/Safeway branches located in the District of Columbia, and the Eastover branch in Oxon Hill, MD. As part of his business activities, BAKER advised bank customers on financial planning and money management, including helping them purchase and manage stocks, bonds, annuities, life insurance, and other investment products. Bank employees, managers and officers would refer existing bank clients to BAKER

with a view towards his selling the clients such investment products. BAKER had sales targets or quotas that he was expected to meet in conjunction with these business activities.

2. SunTrust Bank ("the bank") is a "financial institution" under the definition of those terms in 18 U.S.C. § 20, in that at all times material herein the Federal Deposit Insurance Corporation insured the bank's deposits.

3. At all times relevant to this indictment, BAKER knew Ruqiya Akhdar, a co-schemer known to the grand jury, as a personal friend of several years.

4. Doris Medley was the eighty-seven-year-old owner of a depository account at SunTrust Bank at the time that she was referred to BAKER for investment advice and potential services.

5. Other individuals known to the grand jury are referred to below by their initials as follows: VJ, YR, AW, TP, DF, and LL.

## SCHEME TO DEFRAUD

6. From on or about February 18, 2004, through on or about October 19, 2004, in the District of Columbia and elsewhere, defendant BAKER, aided and abetted by Akhdar, knowingly executed and attempted to execute a scheme and artifice to defraud SunTrust Bank, a financial institution, and to obtain the moneys, funds, assets, securities and other property owned by, and under the custody and control of the bank, by means of materially false and fraudulent pretenses, representations and promises.

## PURPOSE OF THE SCHEME

7. It was a purpose of the scheme and artifice for defendant BAKER to enrich himself by stealing $96,000 from Doris Medley's SunTrust account after fraudulently obtaining dominion and control over such moneys and funds, and to further the scheme by various means including,

but not limited to, omissions of material fact, theft of a financial instrument, false material pretenses, representations, and promises, and repeated financial transactions involving the funds.

## MANNER AND MEANS

8. It was part of the scheme that defendant BAKER caused $96,000 from Medley's money market account at the bank to be transferred to her checking account at the bank without her knowledge and authorization. In doing so, defendant BAKER made material misrepresentations about this transaction and Medley's intentions to bank employees including DF, TP, and LL.

9. It was further a part of the scheme that defendant BAKER caused a $96,000 check from Medley's checking account to be issued in the name of Akhdar, which BAKER and Akhdar negotiated by depositing it into a newly-opened SunTrust account in Akhdar's name, giving them complete dominion and control over those funds for their own use and benefit.

10. It was further part of the scheme that defendant BAKER failed to disclose material information to Medley regarding financial transactions he conducted involving her accounts in an effort to conceal the diversion and unauthorized use of her moneys, funds and property.

11. It was further part of the scheme that defendant BAKER and Akhdar made materially false representations to and omitted material facts from SunTrust employees including VJ, AW, and YR in connection with cash withdrawals from co-schemer Akhdar's account made for the personal benefit of defendant BAKER.

12. It was further part of the scheme that defendant BAKER falsely and fraudulently misrepresented to bank employees that Akhdar was related to Medley, including referring to Akhdar as Medley's granddaughter or niece, and that the moneys being deposited into Akhdar's account represented a rightful inheritance. Defendant then knew in truth and in fact that Akhdar

3

bore no familial relation to Medley and had not inherited her money.

13. It was further part of the scheme that defendant BAKER and Akhdar traveled to several different SunTrust branches to make cash withdrawals from Akhdar's account so as to conceal their fraudulent activities.

14. It was further part of the scheme that defendant BAKER and Akhdar made false representations to bank employees, thereby causing the creation of bank records, including reports relating to currency transactions greater than $10,000 (Currency Transaction Reports, or "CTRs"), which incorporated these false representations and further concealed their fraudulent activities.

15. It was further a part of the scheme that on or about February 19, 2004, at the SunTrust Bank Metro Center branch, defendant BAKER and Akhdar caused a "Deposit Account Debit" slip to be issued and made payable to Akhdar that effected an immediate $3,000 cash withdrawal to Akhdar from her account. Akhdar turned this cash over to BAKER inside the bank.

16. It was further a part of the scheme that on or about February 20, 2004, defendant BAKER called the SunTrust L'Enfant Plaza branch to determine whether enough cash was on hand to accommodate a client's intended withdrawal of $25,000 in cash, and, after learning that there was not, BAKER later appeared in that branch with Akhdar to withdraw $9,000 in cash from her account. At that time, BAKER caused the issuance of a counter check made payable to "Cash" in the amount of $9,000, resulting in a $9,000 withdrawal of U.S. currency from Akhdar's account. Akhdar again turned all of this cash over to BAKER.

17. It was further a part of the scheme that on or about February 27, 2004, BAKER called the Eastover SunTrust branch to determine again whether enough cash was on hand to

4

accommodate a client's intended withdrawal of $25,000 in cash, and after learning there was, drove Akhdar to the branch to withdraw that amount from her account. Defendant thereafter caused the issuance of another counter check made payable to "Cash" in the amount of $25,000, resulting in a $25,000 withdrawal of U.S. currency from Akhdar's account. During this transaction, BAKER falsely represented to the bank employee assisting them that Akhdar had inherited the money from a relative and that she needed it to open a day care center. Defendant again took possession of these funds after leaving the bank and drove back into the District of Columbia with both Akhdar and the cash.

18. It was further part of the scheme that during the above-described $25,000 withdrawal, BAKER caused his co-schemer to misrepresent to bank employee YR that she worked as a "day care provider," which resulted in the creation of a CTR incorporating this misrepresentation. Co-schemer Akhdar signed this CTR. Defendant and Akhdar then knew in truth and in fact that Akhdar did not work as a day care provider.

19. It was further part of the scheme that, without Medley's knowledge or consent, defendant BAKER caused SunTrust's computer systems to be used to open a brokerage account in Medley's name, thereby making it falsely appear that she had directed BAKER to begin making certain investments or otherwise agreed to his doing so.

20. It was further a part of the scheme that defendant BAKER concealed his fraudulent activities by causing the electronic transfer of $58,000 remaining in Akhdar's account to this new SunTrust brokerage account in Medley's name.

21. It was further part of the scheme that defendant BAKER left $1,000 of Medley's SunTrust funds in Akhdar's account, maintaining the appearance that the initial transfer of funds was legitimate and giving Akhdar a monetary benefit.

22. It was further a part of the scheme that BAKER made material misrepresentations to representatives of the National Association of Securities Dealers and investigators with the Federal Bureau of Investigation to conceal his activities with respect to Medley's money.

23. On or about the date listed below, in the District of Columbia and elsewhere, defendant BAKER, for the purpose of executing the above-described scheme and artifice and attempting so to do, knowingly caused the listed fraudulent transaction and obtained effective control over the listed moneys, funds, assets and property owned by and under the control of SunTrust Bank:

| Count | Approx. Date | Item |
| --- | --- | --- |
| One | 2/19/04 | Negotiation of Medley's check no. 1043, payable to Akhdar for $96,000, causing the transfer of $96,000 from Medley's SunTrust account no.----- 2488 to Akhdar's SunTrust account no. ---------8918 |

**(Bank Fraud, Aiding and Abetting and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 1344 and 2.)**

### COUNTS TWO AND THREE – MONEY LAUNDERING

1. Paragraphs one through sixteen and eighteen through twenty-two of Count One of this Indictment are realleged and incorporated by reference as if set out in full.

2. Between on or about February 19, 2004, through on or about February 20, 2004, in the District of Columbia and elsewhere, defendant BAKER, aided and abetted by Akhdar and others known and unknown to the grand jury, knowingly and willfully conducted and attempted to conduct financial transactions affecting interstate commerce, to wit: the transfer and exchange of monetary instruments by, through and to a financial institution, which involved the proceeds of a

specified unlawful activity, that is, bank fraud in violation of 18 U.S.C. § 1344, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of the specified unlawful activity, and that while conducting and attempting to conduct such financial transactions knew that the property involved, that is, the funds deriving and taken from Doris Medley's accounts, which are more fully described below, represented the proceeds of some form of unlawful activity:

| Count | Approx. Date | Item |
| --- | --- | --- |
| Two | 2/19/04 | Withdrawal of $3,000 in U.S. currency from Akhdar's SunTrust account # ---------8918 via Deposit Account Debit # 905, payable to Akhdar, signed and endorsed by Akhdar |
| Three | 2/20/04 | Withdrawal of $9,000 in U.S. currency from Akhdar's SunTrust account # ---------8918 via Counter Check # 47332337, payable to "Cash," signed and endorsed by Akhdar |

**(Money Laundering, Aiding and Abetting and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2).**

### COUNT FOUR – INTERSTATE TRANSPORTATION OF STOLEN PROPERTY

1. Paragraphs one through fourteen and seventeen through twenty-two of Count One of this Indictment are realleged and incorporated by reference as if set out in full.

2. On or about the date listed below, in the District of Columbia and elsewhere, defendant BAKER transported, transmitted, and transferred in interstate commerce goods, wares, merchandise, securities, and money of the value of $5,000 or more, knowing the same to have been stolen, converted and taken by fraud:

| Four | 2/27/04 | Transportation from Maryland to the District of Columbia of $25,000 in U.S. currency obtained via Counter Check # 48496150, payable to "Cash," signed and endorsed by Akhdar, from Akhdar's SunTrust account # ---------8918 |

**(Interstate Transportation of Stolen Property, Aiding and Abetting and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 2314 and 2)**

### COUNT FIVE – FIRST DEGREE FRAUD

1. Paragraphs one through twenty-two of Count One of this Indictment are realleged and incorporated by reference as if set out in full.

2. From between on or about February 18, 2004, until on or about October 19, 2004, in a continuing course of conduct, in the District of Columbia and elsewhere, defendant BAKER, aided and abetted by co-schemer Akhdar and others known and unknown to the grand jury, engaged in a scheme and systematic course of conduct with intent to defraud and to obtain property belonging to Doris Medley with a value of more than $250 that was under the possession, custody, and control of SunTrust Bank by means of false and fraudulent pretenses, representations, and promises.

**(Fraud in the First Degree, Aiding and Abetting and Causing an Act to be Done, in violation of Title 22, District of Columbia Code, Sections 3221(a), 3222(a)(1) and 1805)**

A TRUE BILL.

FOREPERSON

ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA