UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 05-364** |
| | : | |
| v. | : | **Judge Emmet G. Sullivan** |
| | : | |
| **KENNETH C. BAKER, JR.** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## GOVERNMENT'S MOTION FOR VIDEOTAPED
## DEPOSITION OF GOVERNMENT WITNESS

The United states, by its attorney, the United States Attorney for the District of Columbia, pursuant to Rule 15(a) of the Federal Rules of Criminal Procedure, respectfully moves the Court to order that the testimony of Doris E. Medley be taken by videotaped deposition and preserved for use at trial. In support of its motion, the United States makes the following representations:

1.      Defendant engaged in a scheme to fraudulently obtain money belonging to Doris Medley -- the proposed deponent -- from an account she maintained at the Suntrust Bank, Hechinger Mall Safeway Branch ("Hechinger Branch"), located at 1601 Maryland Avenue, N.E., Washington, DC. Defendant worked as a Securities Investment Broker amongst several area Suntrust branch locations, including this one. As a broker, Defendant's responsibilities included marketing and selling investment opportunities to SunTrust patrons with available funds who local branch managers would identify to him as potential investment clients. On February 18, 2004, an assistant manager at the Hechinger Branch referred Ms. Medley to Defendant for financial counseling in this regard, introducing him to her telephonically. The following day, Defendant visited Medley, apparently

bought her some groceries, and returned to the Hechinger Branch for a meeting with several bank managers. At that time, Defendant received instructions not to visit Ms. Medley alone, and not to close any of her accounts since that might confuse her.[1]

2. About one week later, the assistant manager noted that Medley's money market account had been closed, with the $96,000 balance transferred to her checking account. Subsequently, a separate account in a third party's name was opened with a $96,000 check written against Medley's account. Defendant was present for and/or directed each of these actions under the guise of providing Ms. Medley investment services.

3. Although SunTrust ultimately suffered the loss in this bank fraud case, Baker directly victimized Ms. Medley as well. She is presently eighty-nine years old, and she lives in her private home at 1639 Lang Place, N.E., Washington, D.C. In conjunction with the investigation of this case, agents found Ms. Medley's living space to be tidy but almost completely devoid of food (aside from eggs, spoiled milk, and frozen broccoli). In addition, her stove was not working and she had no telephone service. As a result, Ms. Medley was referred to Adult Protective Services (APS). She remained under the care of APS social workers and related personnel for nine months, and her care was then transferred to a court-appointed guardian/conservator, Mr. Daniel Crowley. These caregivers noted Ms. Medley's confusion and intellectual deterioration, and observed that these conditions are likely to worsen over time. In addition, her physician, Dr. J. Neill Kennedy, describes her physical health as sound, considering her advanced age. However, Dr. Kennedy also has indicated that Ms. Medley's mental, emotional and physical conditions affect her ability to function

---

[1] Apparently the assistant manager who referred Medley to Baker knew Medley from her prior banking visits, and had special concerns about how the bank dealt with older customers who might easily become confused about financial matters. Medley was eighty-seven years old during the relevant time period of this case.

independently, to communicate her needs, to receive and evaluate information effectively, and to communicate decisions regarding her personal care, finances and other basic matters of life. Dr. Kennedy also has indicated that her continued longevity is completely speculative.

4.  Ms. Medley's testimony is important to the government's case since she too was victimized by Defendant's fraudulent actions. In essence, the government expects that she would testify that she did not authorize Defendant to close any of her accounts, move any of her money, or open any new accounts. She also would testify that she did not know the third-party in whose name an account was opened with $96,000 of her money. Since the trial may not occur for some time, and due to Medley's age and deteriorating health, there is the real possibility that by the time of trial, she may no longer recall the events in question, be competent to testify, or be available to testify.

5.  Rule 15(a) of the Federal Rules of Criminal Procedure provides that the Court may order the taking of a deposition "[w]henever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial...." The deposition shall be taken in the same manner as civil depositions, except that the scope of direct and cross-examination shall be the same as would be allowed at the trial if the witness is unavailable. Fed. R. Crim. P. 15(e).

6.  The decision to grant or deny a motion to depose a prospective witness is within the sound discretion of the trial court. United States v. Johnpoll, 739 F.2d 702, 708 (2d Cir.), cert. denied, 469 U.S. 1075 (1984). Although there is no mechanical rule for determining when depositions should be allowed, the generally accepted requirements are that the testimony of the witness is material and the witness unavailable. United States v. Salim, 855 F. 2d 944, 48 (2d Cir. 1988); United States v. Sines, 761 F. 2d 1434, 1439 (9th Cir. 1985); United States v. Johnpoll, supra, 739 F. 2d at 709. However, Rule 15 does "not require a conclusive showing of

'unavailability' before a deposition can be taken in a criminal case." United States v. Sines, supra. Rather, it

> only requires that the trial court find that due to exceptional circumstances... it is in the interest of justice that the testimony of a prospective witness...be taken and preserved for possible use at trial. If the party taking the deposition seeks to introduce it at trial, he will have to demonstrate at that time that the deponent is unavailable. It would be unreasonable and undesirable to require the government to assert with certainty that a witness will be unavailable for trial months ahead of time, simply to obtain authorization to take his deposition. (internal citations and quotations omitted). Id.

7. As noted above, the district court has full discretion to grant a motion to take a deposition of a proposed witness at a criminal trial. Fed.R.Cr.Proc. 15(a). Simply stated, the principle objective of Rule 15 is the preservation of evidence for use at trial where there is a possibility that a prospective witness may become unavailable. Furow v. United States, 644 F.2d 764, 767 (9th Cir.), cert. denied, 454 U.S. 871 (1981) (proper to take deposition where witness is ill and has not left a VA hospital for past three years). The government also notes that several other courts have sanctioned the taking of depositions where the witness was old and infirm and potentially unable to appear at trial. See United States v. Keithan, 751 F. 2d 9 (1st Cir. 1984) (exceptional circumstances exist which necessitate the taking of a deposition where witnesses were of "advanced age" and suffering from physical infirmities); United States v. Hagedorn, 253 F. Supp. 969 (N.Y. 1966) (proper to take deposition where witness was elderly and had some history of ill health).

8. The government respectfully submits that Ms. Medley's age and health, coupled with her importance as a government witness in this case, constitute "exceptional circumstances" that compel, in the interest of justice, the preserving of her testimony by videotaped deposition.

If Ms. Medley is incapacitated or deceased at the time of trial, she obviously would be unavailable to the government as a witness. Such a result, we submit, would neither constitute justice nor be in the interest of justice.

9.  Should the court grant the government's request to depose Ms. Medley, the government will videotape the deposition. The government requests that, given her age, it be allowed to take the deposition at a location of Ms. Medley's choosing. The deposition would be conducted in full conformity with the requirements of Rule 15.

10. In January, 2004, the government attorney informed defense counsel of the possibility that the government would be seeking an order authorizing a video-taped deposition of Ms. Medley. On November 11, 2005, the government attorney informed defense counsel that the government would be filing the instant motion.

11. The United States hereby gives notice to the parties, pursuant to Fed. R. Crim. P. 15(b) that if the Court grants the government's motion, the government shall take the deposition of Ms. Medley at a location of her choosing, possibly her residence at 1639 Lang Place, N.E., Washington, D.C., on either December 7, 2005, at 11:00 a.m., or on December 8, 2005, at 11:00 a.m. (depending on the availability of counsel).

WHEREFORE, the United States respectfully requests that the Court order the videotaped deposition of Ms. Medley as soon as possible.

    KENNETH L. WAINSTEIN
    United States Attorney
    For the District of Columbia

By: _____
    Chad Sarchio
    Bar No. 459098
    Assistant United Stat es Attorney
    Washington, DC  20530

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that I caused a copy of the forgoing government's motion to be delivered via facsimile to the counsel for the defendant, James Beane, Esq., this \_\_\_ day of November, 2005.

_____
Chad Sarchio
Assistant United States Attorney