```
                  UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
```

**UNITED STATES OF AMERICA**    :    Criminal Nos.  05-364-01 (EGS)
                                :
       **v.**              :
                                :
**Kenneth C. Baker Jr.**        :
                                :
                                :
       **Defendant.**      :
                                :

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States provides this memorandum in support of its position on the sentence to be imposed upon defendant Kenneth Baker.  The United States asks that the Court adopt the Presentence Report ("PSR") and recommends that the defendant be sentenced to a term of 41 months and maximum terms of supervised release and restitution, and argues as follows:

### I.   The Offense Conduct

On March 22, 2006, defendant Baker pled guilty to the Indictment (Counts I-V), without a plea agreement.  The defendant stands convicted on four counts relating to the unauthorized transfer of funds from Doris Medley's SunTrust Bank account: A) Bank Fraud, Aiding and Abetting and Causing and Act to be Done, in violation of 18 U.S.C. §§ 1344(1) and 2 (Count I); B) Money Laundering, Aiding and Abetting and Causing an Act to be Done, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i)and 2 (Counts II and III); C) Interstate Transportation of Stolen Property, Aiding and Abetting and Causing an Act to be Done, in violation

-2-

of 18 U.S.C. §§ 2314(1) and 2 (Count IV); and D) First Degree Fraud, in violation of 22 D.C. Code §§ 3221(a), 3222(a)(1), and 1805 (2005 ed.)(Count V).

Baker's scheme began in February 2004 when he was working as an investment banker at SunTrust Bank (*See* PSR at ¶4). He recently received a written reprimand stating that he was in jeopardy of termination for failing to meet his sales goals (*id.* at ¶4). A co-worker asked Baker to help Doris Medley, an 87-year old woman with no immediate family, to manage her finances (*id.* at ¶5). The co-worker warned Baker that Ms. Medley's age made her particularly vulnerable to financial scams; that she had recently been defrauded; and that Baker should not close out any of her accounts or go to her home because she might become confused (*id.* at ¶5).

Baker visited Ms. Medley's home the following day, spoke with her about her savings, and delivered groceries to her (*id.* at ¶6). While speaking to Ms. Medley in her living room, Baker apparently stole a blank check from her checkbook (*id.* at ¶6), because later that day, Baker called SunTrust, using his position, caused the bank to transfer $96,000 from Ms. Medley's money market account into her checking account. The $96,000 comprised virtually all of Ms. Medley's life savings. By the close of business on February 19, 2004, Baker and his friend Ruqiya Akhdar used the stolen check to open a checking account in

-3-

Ms. Akhdar's name at SunTrust.  The two deposited $96,000 of Ms. Medley's money into the account, falsely informing SunTrust employees that Akhdar was Medley's "granddaughter" (*id.* at ¶8). The two immediately withdrew $3,000 in cash from the account.

Baker and Akhdar continued to withdraw Ms. Medley's funds via the Akhdar checking account, calling SunTrust before each withdrawal to make sure that the branch had enough currency on hand (*id.* at ¶¶ 8, 9).  On February 20, 2004, two days after Baker first met Ms. Medley, Baker and Akhdar withdrew an additional $9,000 in cash from the account (*id.* at ¶9).  A week later, the two withdrew an additional $25,000 in cash, this time claiming that Akhdar was Medley's "niece" and that she was using the cash "to start a daycare center" (*id.* at ¶10).  On the same day, Baker transferred the balance of the checking account into an account in Ms. Medley's name, having taken $37,000 in cash from the balance (*id.* at ¶10).  Because of his position with SunTrust, Baker clearly acted as the leader of this scheme and his accomplice, Akhdar, received none of the stolen money.[1]

On October 19, 2004, National Association of Securities Dealers(NASD) in Philadelphia called Baker to testify under oath regarding the unauthorized withdrawals from Ms. Medley's account. During the hearing, Baker made numerous false statements:  He

---

[1] The government intends to call Ms. Akhdar as a witness during the sentencing hearing.

-4-

claimed that Ms. Medley told him to transfer funds into her checking account so that she could give money to a relative; that he wrote out the check for $96,000 at Ms. Medley's request but that she signed it; that Ms. Akhdar's withdrew $25,000 cash to purchase a car; and that it was Ms. Akhdar who transferred the money back into Ms. Medley's account, following an argument with Ms. Medley (*see* NASD testimony at pp. 45, 53,83). When directly confronted, Baker could not explain why he would assist in withdrawing $25,000 in cash for the purpose of buying a car when, as an investment advisor, he surely knew that a certified check would have been preferable.

Sixteen months later, Baker pleaded guilty to all five counts in the indictment, admitting that the entire course of conduct was a scheme to defraud Ms. Medley and to conceal the true owner of the funds by creating the series of layered transactions.

## II.   The U.S. Sentencing Guidelines ("USSG")

A.   The Adjusted offense level:   The government agrees with the PSR that the total offense level is **20**, as set forth below. All four counts are grouped pursuant to USSG §3D1.2(d), as the offense level is determined largely on the basis of the total amount of loss. Each of the counts embodies conduct which cross references the underlying substantive offenses of bank fraud and money laundering.

-5-

    **Base Offense Level**:  The base offense level is **14**, determined under the fraud guideline (§2B1.1) with a specific offense characteristic that accounts for loss of more than $30,000.

    **Money Laundering**:  Two levels are added because the defendant is convicted of money laundering, under 18 U.S.C. §1956. (*See* USSG §2S1.1(b)(2)(B)).  (**+2**)

    **Victim Related Adjustment**:  Two levels are added because the defendant knew that the victim was a vulnerable individual. (*See* USSG §3A1.1(b)(1)).  (**+2**)

    **Role in the Offense Adjustment**:  Two levels are added because the defendant was the leader of the scheme to defraud, recruiting a co-defendant and taking the profits. (*See* USSG §3B1.1(c)).  (**+2**)

    **Abuse of Trust Adjustment**:  Two levels are added because the defendant abused the professional discretion afforded to him as an investment banker.  (*See* USSG §3B1.3)).  (**+2**)

    **Accpetance of Responsibility**:  The Court has discretion to adjust two levels downward, because the defendant saved the Court's resources by pleading guilty on the eve of trial. (*See* USSG §3E1.1).  (**-2**)

    **TOTAL OFFENSE LEVEL   =   20**

    B.  <u>Defendant's criminal history</u>:  The government believes that the PSR is correct that the defendant's Criminal History Category is I.  As such, the appropriate recommended range of sentencing is **33 to 41 months**.

-6-

### III.  <u>Recommendation</u>

Defendant Baker has a history of exploiting the slightest trust placed in him; targeting the most vulnerable members of his community; and denying culpability until the moment it becomes disadvantageous to do so.  Although he has substantial income-earning potential, Baker he has chosen to take money by fraud.  Given this history, a sentence of 41 months for defrauding Doris Medley is eminently reasonable.

The crime for which Baker has been convicted illustrates his predatory attitude towards the community.  Baker gained the trust of a confused, isolated 87-year old woman.  Within a week of meeting Ms. Medley, Baker took virtually her entire life savings and left her with only a few hundred dollars.  When authorities began investigating Baker, he lied to everyone involved (including the bank, his accomplice, and the NASD) until it was no longer in his interest to do so.

Baker prefers to take advantage of people who have placed trust in him and lowered their guard.  As set forth in the PSR, Baker was terminated from a position with the Alexandria Police Department in 1994 for entering into sexual relationships with underage girls, claiming that he had created "a mentoring program" (*see* PSR at ¶36).  According to the Department's investigation report, Baker "was untruthful until it was no longer convenient" during the investigation (*id.* at ¶36).

-7-

Similarly, in defrauding Ms. Medley, Baker took advantage not only of the elderly woman's trust, but also the trust of his employer and fellow employees at SunTrust Bank.  Baker used his position at the bank to access Ms. Medley's bank records, circumvent bank procedures, and to convince other employees of the bank to contravene various bank policies (*id* at ¶8).

Baker has had numerous opportunities to earn substantial amounts of money, but chose to use fraud instead of hard work. Baker earned over $84,000 in 2003 as an investment consultant for SunTrust Securities.  He has law enforcement training, Coast Guard training, and may have been a licensed agent for both securities and life insurance (*see* PSR at ¶¶ 64, 74).  He has not had difficulty finding jobs, holding twenty-three jobs during the past twenty years (*id.* at ¶75).  His ex-wife reports that he turned down two jobs in early 2006 because he considered the positions beneath his skill level (*id.* at ¶47). But in the end, despite opportunities that other men can only dream of, Baker chose greed.  Simply put, he felt that he was more entitled to enjoy the fruits of an elderly woman's long life of hard work, than was she.  For this despicable behavior, he should be punished.

The government strongly recommends that this court sentence Baker to the maximum sentence set forth by the advisory guidelines (41 months) followed by a maximum terms of supervised

-8-

release (five years); and full restitution to his former employer, SunTrust Bank, which, because it is ultimately responsible for the conduct of its employee (the defendant) has already made Ms. Medley whole.

                        Respectfully Submitted,

                        KENNETH L. WAINSTEIN
                        UNITED STATES ATTORNEY
                        D.C. Bar Number 451058

By:          /s/
                        BARBARA E. KITTAY
                        D.C. Bar #414216
                        ROY L. AUSTIN, JR.
                        Calif. Bar #211491
                        Assistant U.S. Attorneys
                        555 4th Street, N.W., Room 4846
                        Washington, D.C.  20530
                        (202) 514-6940, 353-9458
                        Barbara.Kittay@usdoj.gov
                        Roy.Austin@usdoj.gov