# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 10, 2007        Decided June 5, 2007

No. 06-3115

UNITED STATES OF AMERICA,
APPELLEE

v.

KENNETH C. BAKER, JR., A/K/A KENNETH C. BAKER,
APPELLANT

**FILED JUN 5 2007**
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Appeal from the United States District Court
for the District of Columbia
(No. 05cr00364-01)

*James W. Beane, Jr.*, appointed by the court, argued the cause and filed the briefs for appellant.

*Youli Lee*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *Roy W. McLeese, III* and *Barbara E. Kittay*, Assistant U.S. Attorneys.

Before: SENTELLE and BROWN, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* BROWN.

2

BROWN, *Circuit Judge*: Kenneth C. Baker pled guilty to a five-count indictment in federal district court, for which he received a 51-month sentence. On appeal, Baker argues his guilty plea and sentence must be set aside because the court impermissibly and prejudicially participated in plea negotiations with him. We find Baker's arguments persuasive and therefore vacate the judgment of the district court and remand for further proceedings.

I

In February 2004, Kenneth Baker, an investment advisor at SunTrust Bank, was asked to assist 88 year-old Doris Medley with estate planning.[1] Baker visited Medley at her house, bought groceries for which she reimbursed him, and obtained a blank check from her checkbook that he had Medley sign. Baker later made the check out to his friend, Ruqiya Akhdar, for approximately $96,000. After Baker used his position at SunTrust to have $96,000 transferred from Medley's money market account to her checking account, Baker assisted Akhdar in opening a SunTrust checking account in Akhdar's name and depositing the $96,000 check in the new account.

Over the next week or so, Baker had Akhdar withdraw approximately $37,000 in cash from the account at various SunTrust branches. According to Akhdar, Baker took all the money. Baker facilitated the withdrawals by calling ahead to the branches, checking if they had sufficient cash on hand, and driving Akhdar to the branches to withdraw the money. On February 27, 2004, the last day Akhdar withdrew money for Baker, Baker electronically transferred the money remaining in

---

[1] The factual background recited herein is based on the government's proffer, during Baker's plea, of its evidence.

Akhdar's account — approximately $58,000 — into a brokerage account he had opened for Medley.

Medley completed an affidavit of forgery on March 5, 2004, which led eventually to Baker and Akhdar being charged with fraud and related offenses. Akhdar pled guilty to fraud and cooperated with the government in prosecuting Baker, who was indicted on five charges.

On March 21, 2006, at the close of a pre-trial hearing, the district court, after noting the trial would start promptly the next morning, engaged in the following colloquy with counsel:

> THE COURT: .... For the last time, I guess, what's the government offering, anything? No harm in asking.
>
> [ASSISTANT UNITED STATES ATTORNEY (AUSA)]: Your Honor, the offer that we extended last Thursday –
>
> THE COURT: I'm just asking. I don't lean on people. I've given up leaning on people. I don't do that. I'm just asking. I just want to make sure the record is clear.
>
> [AUSA]: We're offering, and notwithstanding the fact that it had expired, but we would allow the defendant if he takes it today, the same offer we made on Thursday, which I think was 21 to 27 months.
>
> \* \* \*
>
> THE COURT: Let me throw something out here. This may have an impact, it may not.
>
> I took a plea about two months ago from a man who pled guilty, first offender, 63 years of age, pled guilty to –

4

I don't want to misspeak. The government can check its files. Mr. Krecji, K-R-E-C-J-I. My recollection is he stole $66,000. Maybe it was $166,000. Somewhere around there. He invaded the ERISA plan and made full restitution. And no prior convictions. There was not the vulnerable victim, which I think may be the difference here. The guideline range was 12 to something, 12 to, I can't recall. And he pled guilty and he pled guilty early on and assumed responsibility. I sentenced him to a year and a day, and that's the sentence he'll serve.

Now, judges do try to be consistent. And I sentenced him to a year and a day so he would get 15 percent credit for good time. And had it been punitive I would have sentenced him to one year and he wouldn't have gotten it.

And I just throw that out. I would probably be just as consistent here. There are no prior convictions here, right?

[DEFENDANT'S COUNSEL]: Correct, Your Honor.

THE COURT: But, again, the difference may well be that there were not vulnerable victims in that case, although there was an abuse of trust.

[AUSA]: And there's an abuse of trust here, too, Your Honor.

THE COURT: But the range was 12 months to something, and I rejected it on the bases for adjustments and medical. I rejected all of that and I sentenced him to a year and a day. And that's the sentence he's going to serve. That's all I can say.

[DEFENDANT'S COUNSEL]: Thank you, Your Honor.

5

\* \* \*

THE COURT: Well, look, do you folks want to spend half an hour or so to see if we can resolve this case? Because I tell you, all bets are off now if we go through this. I'm not making any promise about anything.

[DEFENDANT'S COUNSEL]: I would ask is there a possibility –

THE COURT: Why don't I just leave you for a few minutes. Maybe the three of you can talk again. And, again, I'm not trying to pressure anyone, but I don't want to start this if there's some possibility of a resolution.

If there is, to the extent that it's appropriate for the Court to be consistent with prior sentencing, the Court will do so. I'm not going to do one thing in one case where the facts are similar and do something completely different here. I'm just not going to do it. I'm going to be consistent to the extent I can.

I think it's Mr. Krecji's case. And I think he stole $150,000 or something like that. And he made full restitution. But he got a year and a day. That's all I have to say. Let me let you talk. And if you can't agree on anything, then I'll see you tomorrow morning promptly at 9:00 ready to start the next phase.

(The hearing concluded . . . .)

The next morning, Baker's counsel immediately informed the court that Baker wished to plead guilty to the indictment, explaining that "[t]he parties were not able to work out an agreement, a typical plea agreement, but given the situation

we'll enter a plea to the indictment." Addressing Baker, the court inquired why he wished to plead to the indictment. Baker replied, "I just don't believe that there will be enough for me to go forward at this time to win in a jury type of situation." The court refused to accept Baker's plea because he had not acknowledged his guilt. Baker then acknowledged he was guilty "[o]f what's in the indictment." At least seven different times during the plea colloquy, the court asked Baker if he was guilty of the offenses in the indictment and Baker responded affirmatively. The court repeatedly emphasized and had Baker acknowledge that he had not been promised anything in exchange for pleading guilty. The court also stated multiple times that it was fully prepared to have the case go to trial and that Baker would get a fair trial. Eventually, after an extended plea colloquy, the court accepted Baker's guilty plea.[2]

Baker's sentencing hearing was held almost four months later. The recommended sentencing range under the federal guidelines for Baker's four federal offenses was 33 to 41 months, and the government recommended Baker be sentenced to the maximum term. During the hearing, Baker at one point explained that "[w]hen I came in here on March 2 [sic] and fell on my sword, I was pretty much thinking in relation to a case that you had referenced prior to my making my guilty plea of an individual who, I think you said he took a hundred and some odd thousand dollars and you gave him like a year and a day." At the conclusion of the hearing, the court sentenced Baker to the guideline maximum of 41 months for the federal offenses and an

---

[2] Later that day, the court stated that, in the interval between the hearing the day before and Baker entering his guilty plea, it had twice reviewed the tape of Doris Medley's deposition. Commenting on the tape, the court stated: "It's pretty outrageous what happened. She's a vulnerable victim."

7

additional 10 months for his related District of Columbia Code offense.

Baker appealed, asserting for the first time that the district court violated Rule 11 of the Federal Rules of Criminal Procedure by improperly participating in plea discussions.

II

Rule 11 of the Federal Rules of Criminal Procedure governs pleas, and among other things prohibits judicial participation in plea discussions with criminal defendants. *See* FED. R. CRIM. P. 11(c)(1) ("An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. *The court must not participate in these discussions.*" (emphasis added)). Although this court has had little occasion to apply Rule 11(c)(1)'s prohibition, the federal courts as a whole have established a familiar and generally uniform standard, from which we see no reason to depart.

Courts have "widely viewed" Rule 11(c)(1)'s prohibition as serving several purposes:

> First, it diminishes the possibility of judicial coercion of a guilty plea, regardless whether the coercion would actually result in an involuntary guilty plea. Second, the judge's involvement in the negotiations is apt to diminish the judge's impartiality. By encouraging a particular agreement, the judge may feel personally involved, and thus, resent the defendant's rejection of his advice. Third, the judge's participation creates a misleading impression of his role in the proceedings. The judge's role seems more like an advocate for the agreement than a neutral arbiter if he joins in the negotiations.

*United States v. Cannady*, 283 F.3d 641, 644–45 (4th Cir. 2002) (quoting *United States v. Daigle*, 63 F.3d 346, 348 (5th Cir. 1995) (citations omitted)); *see also United States v. Bierd*, 217 F.3d 15, 19 (1st Cir. 2000); *United States v. Casallas*, 59 F.3d 1173, 1178 (11th Cir. 1995); *United States v. Bruce*, 976 F.2d 552, 556–57 (9th Cir. 1992).

Rule 11's prohibition has been interpreted in light of these purposes, and accordingly, "courts have found violations of the rule even in cases where the district judge technically did not participate in discussions with a view toward a plea agreement." *Cannady*, 283 F.3d at 644 (citation, internal quotation marks, and alterations omitted). As one court explained soon after Rule 11 was amended to add the prohibition at issue here:

> The commentaries regarding this injunction, and consideration of its intendment, leave no room for doubt that its purpose and meaning are that the sentencing judge should take no part whatever in any discussion or communication regarding the sentence to be imposed prior to the entry of a plea of guilty or conviction, or submission to him of a plea agreement.

*United States v. Werker*, 535 F.2d 198, 201 (2d Cir. 1976) (citations omitted). Thus, courts have interpreted Rule 11 categorically to mean "the judge's role is limited to acceptance or rejection of the plea agreement after a thorough review of the relevant factors; the judge should not participate in the plea bargaining process." *United States v. Harris*, 635 F.2d 526, 528 (6th Cir. 1980).[3]

---

[3] Initially, the government challenged this established principle, asserting in its brief that "it is crucial to note that there was no 'plea

9

III

Baker and the government disagree about the standard of review applicable in this case. Baker raised his Rule 11 objection for the first time in this appeal. Generally, defendants who fail to raise objections at trial must meet the rigorous requirements of the plain error standard to obtain reversal of a conviction. *See* FED. R. CRIM. P. 52(b). To prevail under the plain error standard, an appellant bears the burden of demonstrating that (1) the court clearly erred, (2) the error implicated the appellant's substantial rights, and (3) the error has "seriously affected the fairness, integrity or public reputation of judicial proceedings." *In re Sealed Case*, 283 F.3d 349, 352 (D.C. Cir. 2002) (alteration omitted) (quoting *United States v. Olano*, 507 U.S. 725, 734–36 (1993)). The government contends plain error is the proper standard of review here. Baker disagrees, arguing that a less exacting standard is appropriate.

In *United States v. Vonn*, 535 U.S. 55 (2002), the Supreme Court clarified that plain error is the appropriate standard for a Rule 11 objection made for the first time on appeal, though not the specific objection at issue here. The defendant in *Vonn* was charged with armed robbery and related crimes. Although the defendant had previously been advised repeatedly of his right to

---

bargain' in this case; rather, appellant pled guilty to the indictment without any promise from the government or the trial court as to his sentence." Appellee's Br. 21. The government wisely abandoned that position at oral argument, however, conceding that a negotiation or agreement between the government's attorney and the defendant is not necessary for a court to violate Rule 11(c)(1). Rule 11(c)(1) does not merely guard against judicial participation in plea discussions when they result in a bargain; it also prohibits participation that effectively undermines the parties reaching a bargain (or a better bargain). *See, e.g.*, *United States v. Bradley*, 455 F.3d 453, 464 (4th Cir. 2006)

counsel at trial, during the plea colloquy the court neglected to notify him of his right to trial counsel, thus violating Rule 11. *Id.* at 60. The defendant objected to the error for the first time on appeal and argued that the Rule 11 violation was subject to harmless error review — a more defendant-friendly standard of review under which the government bears the burden of demonstrating the error was harmless. *Id.* at 61. The Supreme Court disagreed, holding that "a silent defendant has the burden to satisfy the plain-error rule." *Id.* at 59.

Shortly after the Supreme Court's *Vonn* decision, this court considered another alleged Rule 11 error in *In re Sealed Case*, 283 F.3d 349 (D.C. Cir. 2002). In *In re Sealed Case*, the defendant contended — for the first time on appeal — that the district court had failed to detail the elements of the charged crime, and therefore he was not fully informed when he made his guilty plea. *Id.* at 352. Applying *Vonn*, this court stated that "[i]f the defendant allows an alleged error to pass without objection . . . he then assumes the burden of meeting the more exacting plain error requirement of Rule 52(b)." *Id.*

Applied reflexively, *Vonn* and *In re Sealed Case* support the government's argument that the plain error standard of review is applicable here. But having looked closer, we are not so sure. And although we find it unnecessary to resolve the proper standard of review here — because whether we apply the plain error or some less rigorous standard the outcome in this case is unchanged — we believe it is worth explaining why we find the proper standard of review a difficult question.

First, *Vonn* does not suggest that its holding applies to all Rule 11 violations raised for the first time on appeal. *See* 535 U.S. at 74 (stating that, "[a]t the very least, there is no reason persuasive enough to think [Rule] 11(h) was intended to repeal Rule 52(b) for *every* Rule 11 case," (emphasis added), thus

11

suggesting that Rule 52(b)'s plain error standard may be repealed for *some* Rule 11 cases). Obviously, not all Rule 11 violations are created equal. The Rule 11 errors at issue in *Vonn* and *In re Sealed Case* — failures to notify — are qualitatively different than the Rule 11 violation alleged here, which involved not merely neglect on the part of the court, but rather the court initiating and unilaterally acting in a manner clearly proscribed by the Rule.

Moreover, there are compelling reasons for not imposing the demanding plain error burden on defendants alleging impermissible participation by a court in plea negotiations. Where the judge has unilaterally injected himself into the plea process and possibly undermined plea negotiations between the defendant and government by appearing to tacitly offer a "better deal" than the government, the defendant is placed in a unique predicament — with no good options. If he objects, the defendant (1) repudiates the judge's tacit offer, (2) risks angering the judge by implicitly accusing him of impropriety, (3) strengthens the government's bargaining position in the plea negotiations, and (4) possibly encourages the court to impose a more severe sentence. On the other hand, if the defendant remains silent, he is forced to divine whether the judge really did make an implicit offer, and whether to accept the government's less favorable offer or take his chances with the judge. And, according to the government's argument, by remaining silent the defendant is saddled with a difficult standard of review on appeal. Indeed, it seems this quandary is precisely why Rule 11(c)(1) contains its categorical prohibition on judicial participation, and why courts, pre-*Vonn*, applied that prohibition strictly. *See, e.g., Bruce*, 976 F.2d at 558 ("[T]he unambiguous mandate of Rule 11 prohibits the participation of the judge in plea negotiations under *any* circumstances: it is a rule that, as we have noted, admits of no exceptions."); *United States v. Corbitt*, 996 F.2d 1132, 1134 (11th Cir. 1993); *United States v. Adams*, 634 F.2d 830, 835 (5th

12

Cir. 1981); *Werker*, 535 F.2d at 201. Thus, if any Rule 11 error raised for the first time on appeal is to be subject to a less exacting standard than plain error, the type of error present in this case seems a fitting candidate.

Admittedly, however, the only other circuit that has directly addressed, post-*Vonn*, the appropriate standard for reviewing plea-participation errors raised for the first time on appeal has applied the plain error standard. *See, e.g.*, *Bradley*, 455 F.3d at 462; *Cannady*, 283 F.3d at 647 n.5.[4] But those few decisions failed to consider explicitly (1) that *Vonn* did not lay down a blanket plain error standard for all Rule 11 errors raised for the first time on appeal, and (2) the virtual catch-22 defendants are faced with when courts inject themselves into plea negotiations.

Thus, the proper standard of review for Rule 11 errors of the type presented here is a close question. Because, however, our resolution of that question would not affect the outcome of this case, we assume without deciding that plain error is the proper standard, and proceed accordingly.

IV

The government concedes the district court's comments in this case were "regrettable" and even "inappropriate," but contends no error occurred. We are unpersuaded. Rule 11's

---

[4] The Fourth Circuit in *Bradley* cites *United States v. Ebel*, 299 F.3d 187 (3d Cir. 2002), as "finding that district court's impermissible participation in plea negotiations required plain error analysis in light of *Vonn*." *Bradley*, 455 F.3d at 462. That is incorrect, however. Although the court in *Ebel* cited *Vonn* for a different proposition, it appropriately applied Rule 11(h)'s harmless error standard, 299 F.3d at 191, because the defendant in that case had raised the Rule 11 error before the district court, *id.* at 190.

proscription is categorical and emphatic: "The court must not participate in these discussions." FED. R. CRIM. P. 11(c)(1). Courts have widely recognized Rule 11 "prohibits absolutely a district court from all forms of judicial participation in or interference with the plea negotiation process." *United States v. Miles*, 10 F.3d 1135, 1139 (5th Cir.1993) (citation and internal quotation marks omitted).

The district court here unilaterally initiated and engaged in a lengthy plea discussion with Baker. The only reasonable explanation for the court (1) discussing the "year and a day" sentence in a similar case, (2) emphasizing (at least four times) that the court would be "consistent" to the extent it could, (3) specifically mentioning that the previous defendant had "pled guilty early on," and (4) thrice encouraging the parties to "talk again" and "see if we can resolve this case," was to encourage a plea. The court plainly violated Rule 11.

The government further argues that, even assuming the court plainly erred, the error did not affect Baker's substantial rights. Specifically, the government contends Baker has not met his burden of demonstrating the court's comments were the "but for" cause of his decision to plead guilty to the indictment with no plea agreement.

As a preliminary matter, the government is simply wrong in arguing Baker must demonstrate that, "but for" the court's comments, he would not have pled guilty. As the Supreme Court recently held, "a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a *reasonable probability* that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004) (emphasis added). Elaborating on what it meant by "reasonable probability," the Court explained a "defendant

must thus satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding." *Id.* (citations omitted). Thus, contrary to the government's contention, Baker need only demonstrate a "reasonable probability" that he would not have pled as he did absent the court's comments.

Baker has made that showing. It is difficult to imagine how a defendant, faced with a potential sentence of over four years (for both the federal and District of Columbia charges), could fail to be powerfully influenced by the sentencing judge's repeated allusions to his intent to be "consistent" with a "year and a day" sentence in another case — especially when the allusions were mentioned precisely because they might "have an impact" on the defendant's plea negotiations. And it is similarly implausible to conclude a defendant in Baker's position would be unfazed by the court's ominous follow-up statement: "Well, look, do you folks want to spend half an hour or so to see if we can resolve this case? Because I tell you, all bets are off now if we go through this. I'm not making any promise about anything." Even assuming the statement was not intended to coerce, such a statement, backed up as it was by the court's sentencing authority, suggests coercion. "When a judge becomes a participant in plea bargaining he brings to bear the full force and majesty of his office. His awesome power to impose a substantially longer or even maximum sentence in excess of that proposed is present whether referred to or not." *Bradley*, 455 F.3d at 465 (citations omitted).

There is other more direct evidence Baker was influenced by the court's comments. During the court's plea discussions, the government reiterated its offer of 21 to 27 months. Yet Baker, first thing the next morning, informed the court of his desire to plead to the indictment with no agreement with the

15

government. It was illogical for Baker to plead to the indictment with its 41-month guideline maximum when he had a 21- to 27-month offer from the government on the table, unless he thought the court would give him a better deal if he pled "guilty early on and assumed responsibility." Baker's willingness to eschew the government's offer and plead to the indictment with no agreement is best explained by the fact that he was influenced by the court's comments the day before.

Finally, if any doubt remained as to the relationship between Baker's guilty plea and the court's comments, Baker's reference to the court's comments at his sentencing hearing almost four months later puts those doubts to rest. When given an opportunity to respond to the government's 41-month sentencing recommendation, Baker stated: "When I came in here on March 2 [sic] and fell on my sword, I was pretty much thinking in relation to a case that you had referenced prior to my making my guilty plea of an individual who, I think you said he took a hundred and some odd thousand dollars and you gave him like a year and a day."

The government contends any error was cured by the plea colloquy. The government points out that the court repeatedly indicated its willingness to go to trial, emphasized no promises were made in exchange for the plea, and elicited multiple admissions from Baker that he was guilty. And indeed, the transcript from the plea colloquy plainly shows the court strove valiantly to remedy its earlier error.

But the damage was done. Baker had already forgone the government's offer, because he perceived the court had tacitly made him a better one. Of course, Baker knew the court hadn't "promised" him a lenient sentence, but neither would a rational person remain unaffected by the previous day's exchange. For this reason Rule 11 doesn't only prohibit sentencing *promises*,

but more broadly prohibits judicial "participat[ion]" in plea discussions.

Baker's case is distinguishable, moreover, from the few cases where courts have found a judge's remarks concerning a possible sentence not to "rise to the 'level of participation' envisaged by Rule 11." *United States v. Bierd*, 217 F.3d 15, 21 (1st Cir. 2000) (quoting *Blackmon v. Wainwright*, 608 F.2d 183, 184–85 (5th Cir. 1979)). In *Bierd*, for example, the reviewing court noted the trial judge's remarks were "impromptu, unemphatic, and unrepeated." *Id.* at 21. Likewise, the trial court's comments in *Blackmon* were "off-the-cuff remarks," "initiated and pursued entirely by the defense counsel." 608 F.2d at 184. Unlike the remarks in those cases, the remarks here were lengthy, repetitive, initiated and pursued by the court, and accompanied by several concurrent suggestions that the parties "talk again" and "resolve this case."

In sum, the record in this case evinces a "reasonable probability" that, but for the court's comments, Baker would either not have pled or pled with the government recommending a lighter sentence. It is unrealistic to think the court's repeated references to a "year and a day" sentence had no effect on either the impasse between the parties or Baker's decision to plead guilty. Baker has therefore amply demonstrated the court's participation in plea discussions affected his substantial rights.

Finally, as to whether Baker has demonstrated that the court's error has "seriously affected the fairness, integrity or public reputation of judicial proceedings," *In re Sealed Case*, 283 F.3d at 352 (alteration and citation omitted), we think he has satisfied this requirement. Courts have recognized that:

> given the critical interests served by the prohibition — preserving "the judge's impartiality" throughout the

> proceedings and preventing the public from gaining the "misleading impression" that a judge is anything less than a "neutral arbiter" — failure to notice this sort of clear Rule 11 error would almost inevitably seriously affect the fairness and integrity of judicial proceedings.

*Bradley*, 455 F.3d at 463 (citations omitted). This case is no exception to that norm. Regardless of the court's motives in injecting itself into the plea process, the fact remains: Baker was put by the court in a position that would be reasonably perceived by a defendant as inconsistent with the court's role as a neutral arbiter of justice. When a court appears to make a tacit offer of leniency in exchange for a guilty plea, even if that offer is accompanied by caveats, confidence in the court is undermined.

V

We are convinced by our review of the entire record that the district court here had only good intentions in attempting to facilitate a plea agreement initially believed to be advantageous to all involved, did not intend to coerce an involuntary plea, and attempted to remedy its error during the plea colloquy with Baker. Nonetheless, Rule 11's strict prohibition exists because judicial participation in plea discussions is inherently coercive. By "intervening to facilitate a plea," the court "raised the possibility, if only in the defendant's mind, that a refusal to accept the judge's preferred disposition would be punished." *United States v. Barrett*, 982 F.2d 193, 194 (6th Cir. 1992). Despite its good intentions, the court's plain error affected Baker's substantial rights and reflects badly on the fundamental fairness of the judicial process. Accordingly, the judgment of the district court is vacated and the case remanded for further proceedings in which Baker may withdraw his guilty plea. In addition, as is customary, we remand the case for assignment to

18

a different district judge, even though we have confidence the current judge would continue to preside fairly over this case. *See Bradley*, 455 F.3d at 465; *Miles*, 10 F.3d at 1142; *Corbitt*, 996 F.2d at 1135. "Regardless of the judge's objectivity, it is the defendant's perception of the judge that will determine whether the defendant will feel coerced to enter a plea." *Bradley*, 455 F.3d at 465 (citations omitted).

*So ordered.*